**Edwin W. LA SANSKA, Plaintiff,**

**v.**

**UNITED STATES of America et al., Defendant and Third-Party Plaintiff-Appellant,**

**v.**

**GERSON ELECTRIC CONSTRUCTION CO., an Illinois corporation, Third-Party Defendant-Appellee.**

**No. 14883.**

United States Court of Appeals Seventh Circuit.

May 28, 1965.

Edward V. Hanrahan, U. S. Atty., Howard T. Brinton, Harold W. Huff, Chicago, Ill., for appellant.

Frederic L. Goff, Tom L. Yates, Chicago, Ill., for appellee.

Before HASTINGS, Chief Judge, and DUFFY and MAJOR, Circuit Judges.

HASTINGS, Chief Judge.

Edwin W. La Sanska brought this action against United States of America under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b) and 2671 et seq., for an injury allegedly sustained by him while doing construction work upon property owned by Government. Plaintiff alleged a violation of the Structural Work Act of Illinois, Ill.Rev.Stat. ch. 48, § 60.

Government filed a third-party complaint against Gerson Electric Construction Company (Gerson) asserting a

right, based upon written contracts, to be indemnified and defended by Gerson against the claim of plaintiff. Gerson moved to dismiss "for the reason that said Complaint fails to state a claim upon which relief can be granted."

The district court sustained Gerson's motion, entered judgment against Government and certified that judgment was final and there was no just reason to delay an appeal. Government has appealed.

The sole issue before us is the sufficiency of Government's amended third-party complaint. This issue arises on the pleadings.

On or about September 7, 1960, Government entered into a written contract with Joseph J. Duffy Company (Duffy) for the construction of a certain power building at Argonne National Laboratory near Chicago, Illinois. This building was a part of the construction of an atom smasher for the United States Atomic Energy Commission.

Included in this contract were the provisions of paragraph 34, as follows:

"(a) The Contractor [Duffy] assumes entire responsibility and liability for losses, expenses, damages, demands, and claims connected with or arising out of any injury or alleged injury (including death), or damage or alleged damage to property sustained or alleged to have been sustained in connection with or to have arisen out of the performance of the work by the Contractor, its subcontractors and their agents, servants, and employees, including losses, expenses or damages sustained by the Government, and shall indemnify and hold harmless the Government, its agents, servants, and employees from any and all such losses, expenses, damages, demands and claims, and shall defend any suits or action brought against it, or them, or any of them, based on any such alleged injury or damage, and shall pay all damages, costs, and expenses, including attorney's fees,

connected therewith or resulting therefrom.

"(b) 'Injury' or 'damage,' as those words are used in paragraph (a) of this clause, shall be construed to include, but not be limited to, injury or damage consequent upon the failure or use or misuse by the Contractor, its agents, servants, and employees, of any hoist, rigging, blocking, scaffolding, or any and all other kinds of equipment, whether or not owned or furnished by the Government."

On or about October 28, 1960, Duffy entered into a sub-contract with Gerson which contained the following indemnity provision in Article VIII:

"The Sub-contractor hereby agrees to indemnify and keep harmless the Contractor against all liability, claims, judgments or demands for damages arising from accidents to persons or property occasioned by the Sub-contractor, his agents or employees, and against all claims or demands for damages arising from accidents to the Sub-contractor, his agents or employees, whether occasioned by said Sub-contractor or his employees or by the Contractor or his employees, or any other person or persons; and the said Sub-contractor will defend any and all suits that may be brought against the Contractor on account of any such accidents and will reimburse the Contractor for any expenditures that said Contractor may make by reason of such accidents.

"In order to insure the fulfillment of the foregoing, the Sub-contractor hereby agrees to carry public liability and property damage insurance, workmen's compensation or employees' liability insurance, in amounts satisfactory to the Contractor and Owner and in insurance companies approved by the Contractor. The Sub-contractor also agrees to furnish the Contractor with suitable evidence that such insurance

has been taken out and will continue in force until the completion of this work. If the Sub-contractor should sublet any of this work to a third party, he agrees to see that the said third party shall also carry such insurance. An acknowledgment of such insurance from companies issuing same shall accompany this contract."

Article II of this sub-contract stated:

"The Sub-contractor hereby certifies that he has examined all the plans and read and examined all the specifications prepared by said Owner or his Architect or representative for the entire work, of which the work covered by this contract is a part, and agrees that he and his sub-contractors shall be bound by any and all parts of said plans and specifications insofar as they relate in any part or in any way to the work undertaken herein and shall be further bound by the General Conditions or General Provisions of the specifications. *On projects of any federal, state or municipal government or agency thereof, the Sub-contractor binds himself to the Contractor and to such government or agency to fully comply with all the undertakings and obligations of the Contractor, insofar as they shall apply to the Sub-contractor's work, as set forth in the principal contract between the Contractor and such government or agency and the specifications and drawings and addenda thereto.*" (Emphasis added.)

Plaintiff alleged in his complaint that on October 5, 1961 he was working in the power building as an employee of Gerson on a portion of a hoist or crane used as a scaffold or support; that he was caused to fall from the hoist or crane, scaffold or support to a concrete pavement causing severe injuries; and that Government's failure to comply with the Structural Work Act of Illinois was the proximate cause of these injuries.

Government places primary reliance upon the above italicized portion of Article II of the sub-contract between Duffy and Gerson to support its contention that Gerson is bound to defend and indemnify it against plaintiff's suit and award damages, if any.

Gerson contends "that Article II is not an indemnifying agreement, does not purport to be an indemnifying agreement and cannot reasonably be construed as an indemnifying agreement."

Gerson argues that the position of Article II in the contract militates against its consideration as an indemnifying agreement. The contract contains twenty-one separately numbered articles. Articles I, III, IV, V, VI, and VII pertain to physical work to be done by Gerson in accordance with the drawings and specifications contained in the principal contract between Duffy and Government.

In Article VIII Gerson agrees to indemnify and keep harmless Duffy against all liability, claims, judgments or demands for damages, arising from accidents to persons or property occasioned by Gerson, his agents or employees. Gerson's position is that if Government was to be indemnified by Gerson, such indemnity would have been provided for in Article VIII, supra. It argues that Article II, due to its physical association with Articles I and III through VII, merely provides that Gerson shall comply with the *physical work* as contained in the drawings and specification in the principal contract between Duffy and Government.

Gerson further argues that "[t]he language of Article II is not characteristic of an indemnifying agreement" because "[t]he words 'indemnify' or 'hold-harmless' do not appear therein and that agreement nowhere purports to be one for indemnity at all, much less to be one for indemnity against loss due to negligence of the indemnitee or resulting from no negligence on the part of the indemnitor."

While these arguments are plausible, after careful consideration of the contracts, we disagree and hold that Government's third-party complaint states a cause of action against Gerson.

Article XXI of the sub-contract between Duffy and Gerson provided that Government must approve the contract before it was binding on Duffy. Article II of this contract stated, *inter alia*, that "[Gerson] binds himself to the Contractor [Duffy] and to such government or agency to fully comply with all the undertakings and obligations of the Contractor, insofar as they shall apply to the Sub-contractor's work, as set forth in the principal contract between the Contractor and such government or agency and the specifications and drawings and addenda thereto."

To read the contract within the narrow limits defined by Gerson would be to eliminate the specific references to "the undertakings and obligations of the Contractor * * * as set forth in the principal contract * * *." To arrive at the intention of the contracting parties we are required to read the agreements as a whole.

The sub-contract between Duffy and Gerson was invalid without Government's approval. It must be given a fair and reasonable interpretation in its entirety. It is clear to us that a condition of its acceptance by Government was Gerson's agreement that it would assume Duffy's obligation toward United States pertaining to its portion of the work.

It is immaterial whether Government has rights against Duffy. It has a right to look to Gerson who bound itself to United States as a sub-contractor.

We hold that the sub-contract in Article VIII and Article II necessarily incorporates the indemnity agreement in paragraph 34 of the principal contract, supra, and that Gerson thereby agreed to indemnify Government against the claim of plaintiff La Sanska. This finds us in disagreement with the learned district court which read the same documents and thought otherwise.

The judgment of the district court is reversed and this cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.